GEORGE O. KNAPP, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 91699. Promulgated December 19, 1939.

*Farnsworth L. Jennings, Esq.,* for the petitioner.
*George R. Sherriff, Esq.,* for the respondent.

1148

### OPINION.

Tyson: This case involves the amount of $6,000 distributed under a retirement pay or pension trust, which amount had been previously assigned by petitioner, as shown in our findings of fact, to the benevolent fund. The only question presented is whether this amount so distributed by the service annuity trust is taxable to petitioner, the assignor. The applicable statute is set out in the margin.[1]

Petitioner contends that, having irrevocably assigned to the trustees of the benevolent fund all of the annual pension receivable by him during his lifetime in the future for services performed in the past, he has transferred all of his right in the retirement pay, or pension, that such right is a property right, that the income receivable therefrom was not conditioned upon the performance of any further services by the petitioner, and that he is not taxable upon the amount paid to his assignee. He further contends that, since the payments in 1934 were from the income or corpus of a trust, his assignment effected the transfer therefore of his beneficial interest in the trust, and that the income therefrom paid to his assignee is not taxable to him.

The respondent contends that the retirement pay, or pension, which petitioner was entitled to receive as a retired employee of the

---

[1] Revenue Act of 1934.—

SEC. 22. GROSS INCOME.

(a) General Definition.—"Gross income" includes gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property;  *  *  *

company was taxable to him under section 165 of the Revenue Act of 1934 [2] and, if not, that it was nevertheless taxable to him as earned income within the meaning of the applicable statute, regardless of the fact that it was irrevocably assigned by petitioner to a benevolent trust for the uses and purposes of the trust.

No contention is made by respondent that the amount here involved should be included in the income of petitioner because of the application of either section 166 or 167 of the Revenue Act of 1934 to the trust by which petitioner created the benevolent fund.

There is no question raised as to the validity of the assignment or its enforceability as between the parties. So, regarding the assignment as valid between the parties, the question remains whether the assignor is taxable on the amount paid the assignee.

Under the service annuity system of the company, the retirement pay, or pension, to a retired employee was based on services theretofore performed and varied in amount according to the length of service of the employee and the salary paid him during the last five years of his employment. Such retirement pay, or pension, is to be regarded as additional compensation for past services within the meaning of the applicable statute. Cf. *Lucas* v. *Ox Fibre Brush Co.*, 281 U. S. 115; *Fisher* v. *Commissioner*, 59 Fed. (2d) 192; *Noel* v. *Parrott*, 15 Fed. (2d) 669; certiorari denied, 273 U. S. 754; *Botchford* v. *Commissioner*, 81 Fed. (2d) 914, affirming 29 B. T. A. 656; *Levey* v. *Helvering*, 68 Fed. (2d) 401; *James H. Anderson*, 31 B. T. A. 197, affirmed *per curiam*, 79 Fed. (2d) 979; *George S. Williams*, 36 B. T. A. 974.

The question of whether compensation for personal services can be so assigned as to relieve the "earner" from income tax thereon has often been before this Board and the courts, and the decisions are not all in harmony and are somewhat difficult of classification. It is, however, settled that income to be earned in the future as compensation for personal services can not be assigned by an anticipatory agreement so as to relieve the assignor of the tax, *Lucas* v. *Earl*, 281 U. S. 111, and that a member of a partnership can not assign future earnings to a nonpartner and thereby escape the tax. *Burnet* v. *Leininger*, 285 U. S. 136. But where the income assigned is to be received as compensation for services rendered entirely in the past by the assignor and the right to receive it has become fixed and deter-

---

[2] SEC. 165. EMPLOYEES' TRUSTS.

A trust created by an employer as a part of a stock bonus, pension, or profit-sharing plan for the exclusive benefit of some or all of his employees, to which contributions are made by such employer, or employees, or both, for the purpose of distributing to such employees the earnings and principal of the fund accumulated by the trust in accordance with such plan, shall not be taxable under section 161, but the amount actually distributed or made available to any distributee shall be taxable to him in the year in which so distributed or made available to the extent that it exceeds the amounts paid in by him. * * *

mined in him before assignment, it has been generally held that the assignor is relieved from tax thereon because his assignment is that of a property interest. *Hall* v. *Burnet*, 54 Fed. (2d) 443; certiorari denied, 285 U. S. 552; *Commissioner* v. *Ross*, 83 Fed. (2d) 18, affirming 30 B. T. A. 496; cf. *Nelson* v. *Ferguson*, 56 Fed. (2d) 121; certiorari denied, 286 U. S. 565; *Helvering* v. *Seatree*, 72 Fed. (2d) 67; *Shanley* v. *Bowers*, 81 Fed. (2d) 13; *Byrnes* v. *Commissioner*, 89 Fed. (2d) 243; *Julius E. Lilienfeld*, 35 B. T. A. 391; and *Fontaine Fox*, 37 B. T. A. 271.

By the instrument of May 8, 1912, the company established a fund to be used solely for the payment of retirement benefits, or pensions, to its retired employees for their long and faithful services. After his retirement on October 1, 1913, petitioner was duly placed on the service annuity roll and thereby became entitled to an annual retirement pay, or pension, during his lifetime to be paid from the fund and later additions made thereto, including those made under the instrument of December 31, 1929, by which the Peoples Gas Light & Coke Co. service annuity trust was created by the company for the purpose of giving employees "better assurance as to the payment of service annuity allowances granted, or to be granted." Petitioner's right to receive the pension during his lifetime thus became fixed and definite and constituted such a property right as was subject to the assignment he made to the benevolent fund.

Accordingly, under the authorities last above cited, we are of the opinion that the irrevocable assignment of January 21, 1920, by petitioner to the trustees of the benevolent fund of all the retirement pay, or pension, which would have otherwise been thereafter receivable by him from the company constituted an assignment of a property interest which had become fixed and determined in petitioner prior to the time the assignment was made and that the retirement pay, or pension, here involved and received by petitioner's assignee was in no degree dependent upon continued activity of the petitioner to produce it. See *Lowery* v. *Commissioner*, 70 Fed. (2d) 713; *Rossmoore* v. *Commissioner*, 76 Fed. (2d) 520; *Matchette* v. *Helvering*, 81 Fed. (2d) 73; *Shanley* v. *Bowers, supra;* and *Commissioner* v. *Ross, supra; Horst* v. *Commissioner*, 107 Fed. (2d) 906.

The decision in *Gerald A. Eubank*, 39 B. T. A. 583, is not controlling here, for the facts there involved are clearly distinguishable from the facts in the instant case. There, the taxpayer assigned merely a contingent right to receive presently unmatured, unascertainable renewal commissions which the insurance company would not become obligated to pay until the policyholders had made future premium payments, none of which might ever be made, and, further,

the insurance company retained the right to offset against renewal commissions as they became payable any then existing debt of the assignor to the company. There, the subject matter of the assignment was a chose in action the rights under which were entirely contingent upon the happening of uncertain future events in the respects mentioned. In the instant case, the taxpayer assigned a presently existing absolute right to pension payments from a fund created for that sole purpose and neither the assignor's right nor the obligation of the trustees of that fund to pay such pension was contingent upon the happening of any future events.

Having held, as we have, that the assignment of the petitioner to the trustees of the benevolent fund was that of a property interest, it follows that, as further contended by petitioner, it was also an assignment of his beneficial interest in the trust created by the company and thus comes within the rule announced in the following cases: *Blair* v. *Commissioner*, 300 U. S. 5; *Byrnes* v. *Commissioner, supra;* and *Ellen S. Booth*, 36 B. T. A. 141.

We think that the contention of respondent that section 165 of the Revenue Act of 1934 applies here is not sound. As we view that section, it was the intention of Congress to thereby tax to the distributee of a pension fund the amount actually distributed or made available to him during the taxable year. Here, petitioner, after the assignment of his right to retirement pay, or pension, was no longer entitled to any distribution and no amount was actually distributed or made available to him during the taxable year. The amount of the retirement pay, or pension, here involved was actually available only to petitioner's assignee, the trustees of the benevolent fund, who had the legal right to it and to whom it was actually distributed.

We conclude that the respondent erred in including in petitioner's income the amount of $6,000 here involved.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

DISNEY dissents.

---

HARRON, dissenting: The income in question, paid from an employees' trust fund which was contributed wholly by an employer, is retirement pay, and is additional compensation for personal services actually rendered. A pension payment is a form of compensation for personal services, and it is not different from salary or wages, as a type of income. The issue involves taxation of a particular type of income, namely, earned income, or compensation for personal services. The question is, whether the pension payment for 1934 is taxable to petitioner, despite his prior assignment thereof, under the provisions of either or all of the following sections: section 22

(a), defining gross income; section 25 (a) (5), defining earned income; or section 165.

The majority opinion says, in effect, that the rule of *Lucas* v. *Earl*, 281 U. S. 111, does not apply to this case. However, it is submitted that the doctrine of the *Earl* case is that, because of the special quality of earned income, it *must vest* in the earner, for purposes of income tax, and the earner may not prevent the vesting of earnings in him by assignment thereof in anticipation of the payment of the earned compensation. It is believed that the Supreme Court has categorically stated the rule to be that Congress has the right to and intended to tax earned income to the earner, and that the earner may not escape taxation upon earned income. Such appears to be the meaning of the following statement in the *Earl* case:

There is no doubt that the statute could tax salaries to those who earned them and provide that the tax could not be escaped by anticipatory arrangements and contracts however skillfully devised to prevent the salary *when paid* from vesting even for a second in the man who earned it. [Italics supplied.]

The words "when paid" seem to make it clear that the time relation of the effort to prevent the vesting of earned income in the earner and the rendering of services for compensation is not material; i. e., it is immaterial whether, at the date of assignment of future compensation, the earner-assignor has or has not completed the rendering of his personal services. It is in the nature of compensation for personal services, that the compensation is earned by the work of the individual, and is payable to the worker. He may not, by his agility, escape taxation on compensation by executing an assignment at any time. That appears to be the absolute rule. If it is not the rule, every worker can escape taxation on compensation for personal services by the adroitness of assigning compensation before it is paid, as soon as he completes his work. The Supreme Court appears to have placed, already, a bar to the above procedure, by stating that the earner of income can not prevent compensation from vesting in him "when paid." The test is not whether earned income is "beneficially received." The earner may elect to never receive the compensation, but when it is paid, it vests in him *for the purposes of Federal income tax.* If the foregoing is a correct statement of the meaning of the rule in the *Earl* case, it is applicable here, and petitioner is taxable on the pension paid in 1934 to his assignee.

Congress has clearly indicated that pension payments are to be taxed under the same rule as other earned income by enacting section 165, and that the amount of a pension payment is taxable to the earner when it is "made available" to him. Petitioner retired from the employ of the company in 1913. Thereafter, his name appeared on the company's "Service Annuity Roll" and he was entitled to

receive pension annually for life. Presumably petitioner received, personally, pension payments from 1913 up to the date of the assignment in 1920 to the Knapp benevolent fund. Congress enacted for the first time the provision applying to employees' pensions in the Revenue Act of 1921. See section 219 (f) of the Revenue Acts of 1921, 1924, and 1926 and section 165 of the Revenue Acts of 1928, 1932, and 1934. Under these sections of the various acts petitioner was taxable on pension payments distributed or made available to him. After the assignment in 1920, the pension payments were "made available" to petitioner when they became payable. Only the names of former employees could appear on the company's "Service Annuity Roll." The name of the Knapp benevolent fund could not appear on that roll as an employee, and it could receive payment of the pension under the assignment only through petitioner, because of his existence and his status as a former employee. When pension became payable it was "made available" to petitioner because of the services he had rendered and because he lived. The pension was none the less "available" to petitioner even though he elected to have it paid to his assignee. Section 165 is applicable. The 1934 payment is taxable to petitioner under that section and under the rule of *Lucas* v. *Earl, supra*, because the pension vested in petitioner when it was paid, despite his prior assignment thereof.

Congress has allowed deduction from gross income for gifts made to certain charitable uses under section 23 (o) (5). But the amount of the deduction is limited to 15 percent of the taxpayer's net income as computed without the benefit of the subsection. Petitioner's assignment of his pension pay was a gift or contribution to the Knapp benevolent fund. The result reached by the majority opinion in this case would defeat and make meaningless the limitation imposed on the amount of the deduction under section 23 (o) (5) where the amount involved is more than 15 percent of net income. Also, Congress has allowed an exemption from income tax of 10 percent of earned income under section 25 (a) (4), providing an earned income credit. The limitation imposed on the amount of the credit would be defeated, under the majority view, where income of the type involved in this case amounted to more than 10 percent of total earned income.

The case of *Julius E. Lilienfeld*, 35 B. T. A. 391, is distinguishable from this case. The income assigned there was royalties, a type of income clearly different from compensation for personal services and not within the rule of the *Earl* case.

For the reasons stated, I respectfully dissent from the majority opinion.

Sternhagen and Opper agree with this dissent.