Frank A. Thomas and Regina Thomas v. Commissioner.
Thomas v. Commissioner
Docket No. 364-68.
United States Tax Court
T.C. Memo 1969-108; 1969 Tax Ct. Memo LEXIS 187; 28 T.C.M. (CCH) 575; T.C.M. (RIA) 69108; May 26, 1969, Filed Frank A. Thomas, pro se, 39-30 52nd St., Woodside, N.Y. James Q. Smith, for the respondent. FORRESTER
Memorandum Findings of Fact and Opinion FORRESTER, Judge: Respondent has determined a deficiency in petitioners' income tax for the year 1963 in the amount of $403.84 by disallowing the following claimed business expense and medical deductions: 1. Claimed automobile expense deduction - $1,236.48; $986.48 disallowed and $250 allowed. 2. Claimed "office" rental expense deduction $384; all disallowed. 3. Claimed net medical expense deduction of $1,433.67; reduced by $54.82 by reason of determined increases in the amount of petitioners' adjusted gross income under numbers 1 and 2, supra. In addition the petitioners at trial raised the following issues which had not been pleaded: *188 4. Additional medical expenses of $110 for services rendered by Dr. Allan Paisner. 5. Claimed additional sick pay exclusion in the amount of $100 under section 105(d) of the Internal Revenue Code of 1954[1] for Regina Thomas for the first week in January 1963. Petitioners did not move to conform their pleadings to their attempted proofs of the newly raised issues 4 and 5 above under our Rule 17(d), but in this pro se proceeding we waive that requirement and consider such newly raised issues herein, deeming them to be denied by respondent. Findings of Fact The petitioners, Frank and Regina Thomas, resided in Woodside, New York, at the time their petition herein was filed. Their joint return for the year 1963 was filed with the district director of internal revenue at Brooklyn, New York. They will hereinafter be referred to as Frank and Regina. During the year in issue Regina was employed as secretary-treasurer by B. Verner & Company, Inc., and her duties included keeping the books of the corporation and "taking care of all their payrolls." Her salary for the year in issue was reported *189 as $8,915.64. Frank was self-employed during the year in issue, preparing income tax returns for others and doing some bookkeeping and accounting work in connection with such activity. Frank reported gross receipts of $2,235 from this employment for the year in issue from which he deducted claimed costs and business expenses in the amount of $1,236.48 to show a net business income of $389.52. Frank made charges of from $5 to $50 for each return he prepared. At the trial he refused to estimate how many returns he had prepared in 1963 but he had told an examining revenue agent that he had had between 65 and 75 clients during such year and had prepared approximately that many returns. We note that 75 clients, 576 and returns at $30 each, would have produced approximately the gross receipts returned by Frank and we find that he had 75 clients during the year in issue and prepared that number of tax returns. Frank's activities were heaviest during the first third of the year, but he did prepare a few delinquent tax returns in June and July. 1. Automobile Expense Deduction Frank called on some of his clients at their homes and places of business during the year in issue, and *190 there examined their books and prepared their tax returns. He used a new 1963 model car for this purpose which had cost just under $3,000. He put total mileage of about 12,000 miles on this car in 1963 and returned his total operating expenses, including depreciation, at $1,730.98, claiming fixe-sevenths of this amount as a business expense deduction in the amount of $1,236.48. Approximately one-seventh of the total use of such car was business connected and consequently $250 is properly allowable as an ordinary and necessary business expense deduction in connection with Frank's business. 2. Office Rental Expense Deduction During the year in issue petitioners lived in a three and one-half room apartment for which they paid a total rent of $1,680. In a relatively small alcove which was centrally located between the living room and the kitchen-breakfast room on one side and what appears to be a bathroom on the other side, Frank had installed a mediumsize business desk and chair, a typewriter, two adding machines and a two-drawer file cabinet. The desk also held a telephone, file box, lamp and other accouterments. Frank refers to this room as his business office. Its area comprises *191 approximately 23 percent of the area of the entire apartment and petitioner consequently deducted $384 as a business rental expense. Said room was devoted one-fourth to business uses and three-fourths to personal uses and consequently $96 is a reasonable ordinary and necessary business rental expense. 3. Net Medical Expense Deduction The amount of this item is entirely dependent upon issues 1 and 2, supra, and issue 4 infra. 4. Additional Medical Expenses for Amount Paid to Dr. Allan Paisner In December 1962, Regina suffered a fairly severe injury to one of her legs for which she was eventually hospitalized. Dr. Allan Paisner was one of the doctors who treated her and gave her medical advice. He rendered a bill of $110 which Frank paid with a check in March or April 1963, but the check was not good and immediately upon being so advised Frank went to Dr. Paisner's office and gave him $110 in cash. Such amount is a proper addition to petitioners' gross medical expense deduction. 5. Additional Sick Pay Exclusion Regina was not able to spend full time at her place of employment between the dates of January 2 and January 9, 1963, because of her injury, but during this *192 first week in january her employer sent a car to pick her up at home each morning and take her to the company offices where she stayed for approximately one-half hour, picking up the records that she would need, whereupon the company car returned her to her home at which place she worked on such records. Regina then had her leg in a cast. When she arrived at home she did not use Frank's "office" but sat on a couch to keep her leg elevated, balanced her books on the cast and so worked. Regina's salary was continued during this first week in January and petitioners on their return did not include it as a part of their claimed sick pay exclusion, but we have allowed petitioners to raise the issue of such an exclusion at the trial herein. During the first week of January 1963, Regina was not absent from her work on account of personal injury or sickness. Opinion 1. Automobile Expense Deduction Respondent stated at the outset of the trial herein that he was not contesting the amount of $1,730.98 which petitioners had returned as the total cost of operating their car in 1963, but was contesting only that five-sevenths of that amount had been occasioned by Frank's use in connection *193 with his business. Respondent's determination allowed automobile business expense of $250 which was arrived at by an allowance of 33 necessary miles at 10 cents a mile for each one of Frank's 75 clients. In spite of respondent's concession as to the total amount spent in connection with 577 the car, Frank insisted on testifying to minutae going to make up said total of $1,730.98. Finally the following exchange occurred between Frank and the Court: THE COURT: Mr. Thomas, I will stop you for a minute. You have now testified to figures that the Respondent has already admitted. The Respondent does not dispute or quarrel with any of these figures. I am going to suggest that you tell me how much of the time you used this car in business and how much of the time you used it for personal pursuits. If you have mileage, tell me how many miles you used it in connection with your business and how many miles you used it in connection with going to the grocery store, going to church, going to the movies in the evening, any other personal use, driving it on your vacation, to get some basis in the record where I can look at the record and say, well, this percentage of the use was obviously *194 business and this percentage of the use was obviously personal because under the law you cannot deduct that part of the use which was personal. Do you understand that? THE WITNESS: I understand that, your Honor. THE COURT: So I'd suggest you try to get something into the record that I can look at and come to a conclusion as to what percent or what fraction of this expense can reasonably be said to be business and the rest of it personal, or what can reasonably be said to be personal and then the rest of it business. THE WITNESS: May I say this, your Honor - THE COURT: Very well. THE WITNESS: In 1963, I think the law was subsequently changed, it was an acceptable practice by the Internal Revenue Service to accept the computation of two-sevenths for personal and five-sevenths for business, provided you could substantiate the deductions, which I have already said. That law has been changed since, but in 1963 when this tax return was filed this was an acceptable practice by the I.R.S.
THE COURT: I am not familiar with it, but you are not before the I.R.S. now. You are before the Court. There has never been such a rule of law, and, in Court, to get a deduction you have to *195 prove it was business connected. Thereafter Frank continued to testify solely concerning details of expense and in spite of repeated admonitions failed to give us the name of a single client, the distance he had driven to call on any client or any facts upon which we could reasonably base an estimate of the percentage of the total use of this car which was ordinary and necessary in connection with Frank's business. Respondent's determined allowance of $250 must be sustained because of petitioners' failure to carry their burden of proof, but we observe that this figure closely appoximates one-seventh of the total claimed expense of $1,730.98 which amount, if anything, seems overly generous in view of the facts that Frank's business activities were largely confined to the first third of the year in issue and his vigorous contentions that his "office" in the apartment was in almost constant use in interviewing clients and preparing tax returns. 2. Office Rental Expense Deduction We have accepted Frank's original estimate that the "office" area of petitioners' apartment amounted to approximately 23 percent of the apartment's entire area. At trial Frank testified that it was at *196 least 25 percent of the entire area but examination of the photographs, which petitioners introduced into evidence, indicates that if anything the 23 percent estimate is too high. The office area is in fact the back portion of the living room and may have been originally intended for use as a small dining room area. It is centrally located in the apartment, has no outside windows and seems to be the sole means of access between the living room and the other rooms of the apartment. Frank's contention that it was used 100 percent in connection with his business during each day of the year is entirely unrealistic. Exercising our best judgment we allow 25 percent of the use of the room as an ordinary and necessary business expense in the amount of $96. Cohan v. Commissioner, 39 F. 2d 540. 3. Net Medical Expense Deduction This amount will now be recomputed under Rule 50 to reflect the adjustments we have made in issues 1 and 2 and to reflect the additional amount which we allow in issue 4. 4. Additional Medical Expenses for Amount Paid to Dr. Allan Paisner Our holding on this issue is fully explained in our findings of fact and this $110 is allowed as a part *197 of petitioners' medical expense deduction. 578 5. Additional Sick Pay Exclusion Section 105(d) of the Internal Revenue Code provides in pertinent part: (d) Wage Continuation Plans. - Gross income does not include amounts referred to in subsection (a) if such amounts constitute wages or payments in lieu of wages for a period during which the employee is absent from work on account of personal injuries or sickness; * * * Section 1.105-4(a)(5), Income Tax Regs., provides in pertinent part: Furthermore, the employee is not absent from work when he performs substantial services for his employer, even though they are performed at a place other than his usual place of employment. * * * Our findings make it clear that during the first week in January 1963 Regina was not absent from her work within the meaning of the statute and the regulations and that she did perform substantial services for her employer. See Hall v. United States 242 F. 2d 412 (1957); and Estate of Leo P. Kaufman, 35 T.C. 633 (1961). Consequently this claimed additional sick pay exclusion is denied. Decision will be entered under *198 Rule 50. Footnotes
1. All references are to the Internal Revenue Code of 1954.↩